**SO ORDERED.**

**SIGNED this 24 day of April, 2025.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 21-01955-5-DMW |
| B & M REALTY, LLC | |
| | CHAPTER 11 |
| DEBTOR | |

| | |
|---|---|
| B & M REALTY, LLC | |
| PLAINTIFF | |
| vs. | |
| DWIGHT ELAM, ALLEN SIMMONS, UNITED PROPERTIES, INC., PLUS, and ALIGHT INVESTMENTS/PLUS, LLC | ADVERSARY PROCEEDING NO. 23-00085-5-DMW |
| DEFENDANTS | |

### MEMORANDUM OPINION

This matter comes before the court upon the Complaint filed by B & M Realty, LLC ("Plaintiff") on August 28, 2023, seeking judgment against Dwight Elam ("Mr. Elam"), Allen Simmons ("Mr. Simmons"), United Properties, Inc., Plus, ("United Properties"), and Alight Investments/Plus, LLC ("Alight") (collectively, "Defendants") for damages resulting from fraud, conversion, civil conspiracy, and unfair and deceptive practices and seeking a determination that

Mr. Elam and Mr. Simmons are alter egos of United Properties and Alight and the corporate veils of United Properties and Alight should be pierced.

The court conducted a trial on January 14-15, 2025 in Raleigh, North Carolina. J.M. Cook, Esq. appeared for the Plaintiff, and William H. Kroll, Esq. appeared for the Defendants. Contemporaneous with entry of this Opinion, the court shall enter a Judgment dismissing the Complaint as against Mr. Simmons and Alight, dismissing the claim for civil conspiracy, piercing the corporate veil of United Properties and related entities and determining Mr. Elam to be their alter ego, and awarding the Plaintiff damages against Mr. Elam and United Properties in the total amount of $1,173,710.53. Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, incorporated by Rule 7052 of the Federal Rules of Bankruptcy Procedure, this Opinion sets forth the court's findings of fact and conclusions of law in support of the Judgment.

## FINDINGS OF FACT

At trial, the Plaintiff called Maria Brown-Lindsey ("Ms. Brown-Lindsey"), Jonathan McCollum, Esq., Mr. Elam, and Mr. Simmons to testify and introduced exhibits which the court admitted into evidence. The Defendants called Brad Lindsey ("Mr. Lindsey") and Ms. Brown-Lindsey to testify. Based upon the evidentiary testimony and exhibits in concert with stipulations of the parties set forth in the Final Pretrial Order entered on December 11, 2024, the court record, and a Declaration of J.M. Cook filed on January 20, 2025, the court finds the facts to be as follows:

1.  In July 2013, upon the death of their father, Ms. Brown-Lindsey and her brother Michael N. Brown ("Mr. Brown") inherited multiple parcels of real property ("Properties") located throughout Durham, Granville, Halifax, and Vance Counties, North Carolina which were

mostly rented to third parties. At this time, the Properties were encumbered by a lien in favor of U.S. Bank, National Association to secure a loan with an approximate balance of $40,780.00.

2. At the time of Ms. Brown-Lindsey's father's death, Ms. Brown-Lindsey and Mr. Lindsey (collectively, the "Lindseys"), who are married, lived in New Jersey; however, they relocated to North Carolina in 2018 and began living in one of the Properties.

3. After returning to North Carolina, the Lindseys determined that the Properties needed various repairs, renovations, and updates that would support rent increases.

4. In October, 2018, a tenant introduced the Lindseys to Mr. Elam, who represented himself as a licensed general contractor who could manage work to the Properties.

5. Mr. Elam is not and never has been a licensed general contractor.

6. Mr. Elam represented that he operated through the United Properties corporation.

7. United Properties was incorporated by Mr. Elam on June 21, 2007 by filing Articles of Incorporation with the North Carolina Secretary of State. United Properties was administratively dissolved on February 5, 2018, prior to the Lindseys meeting Mr. Elam.

8. In addition to United Properties, Mr. Elam formed United Properties Plus, LLC and United Properties PL, LLC on August 7, 2013 and February 14, 2018, respectively. United Properties Plus, LLC was administratively dissolved on January 14, 2016.

9. Mr. Elam used interchangeably the similar names of United Properties, United Properties Plus, LLC, and United Properties PL, LLC, and the three entities have no distinct operations.

10. The court received no evidence that United Properties, United Properties Plus, LLC, and United Properties PL, LLC maintained corporate or financial records or operated with the appropriate corporate governance.

11. Mr. Elam introduced the Lindseys to Mr. Simmons as someone who would be working with Mr. Elam in connection with United Properties.

12. Alight is a limited liability company formed by Mr. Elam and Mr. Simmons on April 24, 2017 by filing Articles of Organization with the North Carolina Secretary of State.

13. Mr. Elam advised the Lindseys to form a limited liability company to manage and hold title to the Properties.

14. Mr. Elam is not and never has been a licensed attorney.

15. On November 9, 2018, the Lindseys formed the Plaintiff by filing Articles of Organization with the North Carolina Secretary of State. Subsequently, Ms. Brown-Lindsey and Mr. Brown transferred the Properties to the Plaintiff.

16. Between approximately October 3, 2018 and December 16, 2019, Ms. Brown-Lindsey, on behalf of the Plaintiff, and the Plaintiff paid a total of $114,999.99 by checks to Mr. Elam and United Properties for use in renovating the Properties. These payments are detailed as follows:

    a. Check number 306 from joint account of Ms. Brown-Lindsey and Mr. Brown dated October 3, 2018 and made payable to Mr. Elam for $20,000.00;

    b. Check number 104 from account of Ms. Brown-Lindsey dated November 1, 2018 and made payable to Mr. Elam for $25,000.00;

    c. Check number 109 from the account of Ms. Brown-Lindsey dated November 16, 2018 and made payable to Mr. Elam for $3,000.00;

    d. Check number 112 from the account of Ms. Brown-Lindsey dated December 3, 2018 and made payable to Mr. Elam for $7,200.00;

  e. Check number 113 from the account of Ms. Brown-Lindsey dated December 3, 2018 and made payable to Mr. Elam for $7,800.00;

  f. Check number 091 from the account of the Plaintiff dated January 25, 2019 and made payable to Mr. Elam for $7,000.00;

  g. Check number 114 from the account of the Plaintiff dated March 29, 2019 and made payable to Mr. Elam and United Properties for $8,333.33;

  h. Check number 115 from the account of the Plaintiff dated March 29, 2019 and made payable to Mr. Elam and United Properties for $8,333.33;

  i. Check number 116 from the account of the Plaintiff dated March 29, 2019 and made payable to Mr. Elam and United Properties for $8,333.33;

  j. Check number 138 from the account of the Plaintiff dated May 30, 2019 and made payable to Mr. Elam for $9,000.00;

  k. Check number 140 from the account of the Plaintiff dated May 30, 2019 and made payable to Mr. Elam for $9,000.00;

  l. Check number 156 from the account of the Plaintiff dated December 16, 2019 and made payable to United Properties for $1,000.00; and

  m. Check number 157 from the account of the Plaintiff dated December 16, 2019 and made payable to United Properties for $1,000.00.

17. In addition, Ms. Brown-Lindsey, on behalf of the Plaintiff, and the Plaintiff paid Mr. Elam at least $25,000.00 in cash.

18. Mr. Elam advised the Lindseys that additional capital beyond the amounts that the Plaintiff was able to pay would be necessary to complete the desired renovations to the Properties, and Mr. Elam began seeking financing on behalf of the Plaintiff.

19. With Mr. Elam's assistance, the Plaintiff incurred the following debt ("Loans"), with each obligation secured by some or all the Properties:

 a. On or about February 6, 2019, the Plaintiff borrowed $275,000.00 from Kuntal Ghandi ("Mr. Ghandi"), and Mr. Elam and United Properties received $98,000.00 from the proceeds;

 b. On or about January 30, 2020, the Plaintiff borrowed $88,125.00 from Stated Income Group, and Mr. Ghandi received $80,789.12 of the proceeds;

 c. On or about January 30, 2020, the Plaintiff borrowed $122,500.00 from Stated Income Group, and Mr. Ghandi received $82,726.62 of the proceeds, and Mr. Elam and United Properties received $29,686.17 of the proceeds;

 d. On or about January 12, 2021, the Plaintiff borrowed $154,000.00 from Bayshore Investors (Michael R. Grow), and Mr. Ghandi received $121,157.16 of the proceeds; and

 e. On or about January 12, 2021, the Plaintiff borrowed $75,000.00 from Bayshore Investors (Provident Trust Group FBO Doug White, IRA), and Mr. Elam and United Properties received $55,594.00 of the proceeds.

20. For each of the Loans, the Lindseys signed loan applications and financial statements prepared by Mr. Elam. These documents contained false financial information, and Mr. Elam often used his contact information in place of that for either the Lindseys or the Plaintiff.

21. From the proceeds of the Loans, Mr. Elam and United Properties received a total of $183,280.17.

22. Mr. Elam and United Properties received a total of $323,280.16 from the Plaintiff and proceeds from the Loans. These funds were property of the Plaintiff and entrusted to Mr. Elam and United Properties for use in renovations of the Properties. Mr. Elam and United Properties produced no evidence of how they utilized these funds.

23. Mr. Elam and United Properties failed to complete any meaningful renovations on the Properties, and they failed to pay for materials and to pay subcontractors. As a result, the Properties did not produce sufficient income to allow the Plaintiff to make required payments on the Loans or to pay assessed *ad valorem* taxes on the Properties.

24. Due to the financial distress caused by the actions and inactions of Mr. Elam and United Properties, on September 1, 2021, the Plaintiff filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

25. On January 9, 2023, the court dismissed the Plaintiff's bankruptcy case due to inability to confirm a feasible plan of reorganization. After the dismissal, the Plaintiff sold or surrendered most of the Properties for the benefit of creditors, and on August 1, 2023, the court reopened the case to allow the Plaintiff to reattempt reorganization in light of the disposition of the Properties.

26. On April 4, 2024, the court confirmed a plan of reorganization which allows for additional funding from any recovery made through this adversary proceeding.

27. The Plaintiff has incurred attorneys' fees of $40,060.00 in prosecuting this adversary proceeding.

**CONCLUSIONS OF LAW**

<u>Dismissal of Causes of Action Against Mr. Simmons and Alight
and Dismissal of Civil Conspiracy Claim</u>

The court begins its discussion by addressing the allegations against Mr. Simmons and Alight. While they may have been tangentially involved in the relationship and transactions between the Plaintiff, Mr. Elam, and United Properties, the Plaintiff did not present sufficient evidence for the court to find Mr. Simmons liable for fraud, conversion, or unfair and deceptive trade practices, for the court to find a civil conspiracy between Mr. Elam and Mr. Simmons, or for the court to pierce the corporate veil of Alight.

<u>Conversion</u>

In North Carolina, there are two basic elements to a claim of conversion: ownership in the plaintiff and wrongful possession or conversion by the defendant. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (citing *Gadson v. Toney*, 69 N.C. App. 244, 246, 316 S.E.2d 320, 321-22 (1984)). Through direct payments and proceeds of the Loans, Mr. Elam and United Properties received $323,280.16 of funds belonging to the Plaintiff. Ms. Brown-Lindsey gave credible testimony that these funds were not given to Mr. Elam and United Properties as compensation for their services but entrusted to them for use in renovating the Properties. Mr. Elam provided no evidence to support his assertions that that funds were utilized as intended. The lack of improvement to the Properties discredits that defense, and the court finds that Mr. Elam and United Properties wrongfully converted the Plaintiff's funds for their own benefit.

<u>Fraud and Unfair and Deceptive Trade Practices</u>

The court will address the allegations of fraud and violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") together, as these types of actions often are

8

combined. The essential elements of actionable fraud in North Carolina are well-established: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974) (citations omitted).

The UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts of practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citing *Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 461, 400 S.E.2d 476, 482 (1991)). With respect to the first element, "[a] practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Id.* (citing *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). A plaintiff can assert both UDTPA violations and fraud based upon the same conduct or transactions, and a plaintiff who proves fraud establishes a *prima facie* claim for unfair and deceptive trade practices. *Jones v. Harrelson and Smith Contractors, LLC*, 194 N.C. App. 203, 217, 670 S.E.2d 242, 252 (2008) (citations omitted).

The court has never before seen such an egregious case of fraud and deceit as that perpetrated by Mr. Elam, under the guise of United Properties, against the Plaintiff and the Lindseys. Mr. Elam falsely represented himself as a contractor who could manage restoration of the numerous Properties to conditions of profitability, all the while knowing that he was neither qualified nor licensed to take on such an immense project. Mr. Elam made the representations

with the intent to deceive the Lindseys and the Plaintiff out of significant funds. He was successful in this deceit, and he increased the damages by encouraging the Plaintiff to saddle the Properties with liens to secure the Loans.

Mr. Elam defends, and the Lindseys concede, that the parties became close and like "family" during their dealings and seemingly shared a joint vision for the Properties; however, this self-serving fiction makes Mr. Elam's deceit even more abominable. Mr. Elam, a deceitful and skillful scam artist, played into the Lindseys' emotions to extract thousands of dollars from the Plaintiff and the Properties. In turn, Mr. Elam and United Properties provided no benefit to the Properties, which were inherited by Ms. Brown-Lindsey and Mr. Brown practically unencumbered. As a result, the Plaintiff lost most of the Properties without any vehicle to fund the repayment of this substantial debt. This undeniable fraud, which affected the commerce of renting the Properties, amounts to a violation of the UDTPA.

<u>Piercing of United Properties Corporate Veil</u>

A court may disregard an entity's corporate form and "pierce the corporate veil" to "extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or to achieve equity. In North Carolina, what has been commonly referred to as the 'instrumentality rule,' forms the basis for disregarding the corporate entity or 'piercing the corporate veil.'" *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985) (citation omitted).

Under the instrumentality rule, the Plaintiffs must prove the following elements regarding Mr. Elam's control over United Properties:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* (quoting *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 8, 149 S.E.2d 570, 576 (1966)). "Evidence upon which we have relied to justify piercing the corporate veil includes inadequate capitalization, noncompliance with corporate formalities, lack of a separate corporate identity, excessive fragmentation, siphoning of funds by the dominant shareholder, nonfunctioning officers and directors, and absence of corporate records." *Green v. Freeman*, 367 N.C. 136, 145, 749 S.E.2d 262, 270 (2013) (citing *Glenn*, 313 N.C. at 455-58, 329 S.E.2d at 330-32).

The court received no evidence of any corporate operations distinct from Mr. Elam's fictitious fronting of the corporate name of United Properties, which was dissolved prior to Mr. Elam meeting the Lindseys and the formation of the Plaintiff, as well as the names of United Properties Plus, LLC, and United Properties PL, LLC. The court finds easily that United Properties, United Properties Plus, LLC, and United Properties PL, LLC are mere instrumentalities of Mr. Elam; therefore, the court pierces the corporate veils of United Properties, United Properties Plus, LLC, and United Properties PL, LLC so that Mr. Elam is liable personally for any claims against United Properties, United Properties Plus, LLC, and United Properties PL, LLC.

<u>Damages</u>

The quantifiable damages to the Plaintiff resulting from Mr. Elam's and United Properties' fraud, conversion, and violation of the UDTPA are $323,280.16, which is the total amount of funds entrusted to them from the Plaintiff. The court adds interest of $54,603.35, calculated at 5% of the damages accruing from September 1, 2021, the date of the Plaintiff's

11

bankruptcy petition, until the oral rendering of judgment on January 15, 2025, for a total of $377,883.51. Pursuant to N.C. Gen. Stat. § 75-16 of the UDTPA, these damages shall be trebled to $1,133,650.53. *See Jones*, 194 N.C. App. 203 at 217, 670 S.E.2d at 251 (noting that "[a] UDTP claim is a substantive claim, the remedy for which is treble damages."). In addition, N.C. Gen. Stat. § 75-16.1 allows the court to tax Mr. Elam and United Properties with the Plaintiff's attorneys' fees of $40,060.00, rendering the total amount of Judgment to be $1,173,710.53.

END OF DOCUMENT